```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
                 Civil Action No. 09-129

    ---------------------------------

    In Regard to the Matter of:

    Bayside State Prison            OPINION/REPORT
    Litigation                         OF THE
                                    SPECIAL MASTER
    MICHAEL BODDIE

              -vs-

    WILLIAM H. FAUVER, et al,

           Defendants.

    ---------------------------------




                    *     *     *     *

              TUESDAY, JUNE 2, 2009

                    *     *     *     *








    BEFORE THE HONORABLE JOHN W. BISSELL, SPECIAL MASTER
```

```
 1
 2
 3
 4
 5              Transcript of proceedings in the above
 6   matter taken by Theresa O. Mastroianni, Certified
 7   Court Reporter, license number 30X100085700, and
 8   Notary Public of the State of New Jersey at the
 9   United States District Court House, One Gerry Plaza,
10   Camden, New Jersey, 08102, commencing at 1:50 PM.
11
12
13
14
15
16
17
18
19             MASTROIANNI & FORMAROLI, INC.
20          Certified Court Reporting & Videoconferencing
21                  251 South White Horse Pike
22                  Audubon, New Jersey 08106
23                         856-546-1100
24
25
```

```
 1
 2   A P P E A R A N C E S:
 3
 4        LOUGHRY & LINDSAY, ESQUIRES.
          BY:   LAWRENCE W. LINDSAY, ESQUIRE
 5        330 MARKET STREET
          CAMDEN, NEW JERSEY 08102
 6        856-968-9201
          ATTORNEYS FOR THE PLAINTIFFS
 7
 8
          ROSELLI & GRIEGEL, PC
 9        BY:   MARK ROSELLI, ESQUIRE
                - and -
10        BY:   STEVEN GRIEGEL, ESQUIRE
          1337 STATE HIGHWAY 33
11        HAMILTON SQUARE, NEW JERSEY   08690
          609-586-2257
12        ATTORNEYS FOR THE DEFENDANTS
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1          JUDGE BISSELL:  I'm reopening
2  proceedings now in the case of Michael Boddie,
3  B-O-D-D-I-E, civil 09-129.
4          This opinion/report is being issued
5  pursuant to the directives of the Order of Reference
6  to a Special Master and the Special Master's
7  Agreement and the guiding principles of law which
8  underlie this decision to be applied to the facts
9  upon which it is based as set forth in the jury
10 instructions in the Walker and Mejias jury charges to
11 the extent applicable to the allegations of Mr.
12 Boddie.
13         As finalized after review under Local
14 Civil Rule 52.1, this transcript will constitute the
15 written report required under paragraph seven of the
16 Order of Reference to a Special Master.
17         Michael Boddie was housed in D Unit and
18 recounts that on approximately August 11th D Unit was
19 searched, SOG officers provided the escorts and that
20 he went to and from the gym under that standard
21 operating procedure without incident.
22         He did testify, however, to a later
23 assault although he placed it two or three days
24 afterwards.  As far as the records are concerned
25 including log books, if indeed SOGs were in D Unit,

1   it would have been on the following day, August 12th
2   which is not inconsistent with Mr. Boddie's testimony
3   when they were in the unit to assist with showers.
4                   According to the log book, D-564A in
5   evidence, and a stipulation from the SOG log, the
6   SOGs were in there for that purpose at that time.
7   Mr. Boddie was among those who refused showers, once
8   again according to the log.
9                   Mr. Boddie asserts that he was
10  assaulted in his cell by SOGs on that date and I will
11  read portions of his testimony appearing on
12  January 22nd, 2009, about those events.
13                  Beginning on page 20 at line ten he's
14  asked:
15                  "Question:  Okay. Tell us what
16  happened.
17                  "Answer:  Well, I was standing at the
18  door.  And officers, you know, patrol the units, so
19  they walk around, they see me.  Told me to get out
20  the door.  I got out the door.  Sat down, watched my
21  TV.  Couple minutes later my door bust open, so I
22  stood up.  Stood where the table was out.  And they
23  came in, so I dropped to the floor and just covered
24  my head.  And they started assaulting me.
25                  "Question:  They started assaulting

1   you?
2              "Answer:  Yes.
3              "Question:  How many officers?
4              "Answer:  Four.
5              "Question:  And could you tell -- did
6   you recognize any of them?
7              "Answer:  No.
8              "Question:  Were they SOG or were they
9   regular Bayside officers?
10             "Answer:  They were SOG.  They had
11  their helmets, helmets on.
12             "Question:  Okay.  Now, did they have
13  any sticks or any other tools?
14             "Answer:  Yes.
15             "Question:  And were you assaulted with
16  night sticks?
17             "Answer:  I know I was kicked, punched.
18  I don't believe I was hit with a stick.  But I was
19  kicked and punched.
20             "Question:  How many times were you
21  punched?
22             "Answer:  Can't recall how many.  I
23  know I got hit in my eye, my right eye.  I was kicked
24  here, in my right tricep.  My hip area right here.
25             "Question:  Okay.  So how about kicks?

1   Do you have any idea how many times you were kicked?

2               "Answer:  No, I can't remember how many
3   kicks.

4               "Question:  And do you know whether all
5   of these officers participated in the assault or just
6   one?

7               "Answer:  I know I seen three."

8               Continues.

9               "Question:  Did they say anything to
10  you prior to entering your cell?

11              "Answer:  No:

12              "Question: I think you indicated that
13  you had been told something to -- something about the
14  door.  Could you repeat what you were told?

15              "Answer:  They told me to get out the
16  doorway.  Get out the window.

17              "Question:  Who was it that told you
18  that?

19              "Answer:  The officers.

20              "Question:  Were they SOG officers that
21  told you that?

22              "Answer:  SOG.

23              "Question:  So you were given an
24  instruction.  Did you follow that instruction?

25              "Answer:  Yes, I did.

1    "Question:  And then did the -- how
2    long before they came back and assaulted you?
3    "Answer:  Had to be like a couple
4    minutes."
5    Continuing.
6    "Question:  Okay.  Do you know if it
7    was the same officer who -- did the officer that
8    directed you to stand back away from the door, did he
9    participate in the assault?
10   "Answer:  I'm not sure.  They had their
11   riot gear on, the helmets and all that.  I couldn't
12   see.
13   "Question:  Now, when these officers
14   entered your cell, did they say anything?
15   "Answer:  Nope.
16   "Question:  Nothing?
17   "Answer:  Nothing.
18   "Question:  How long did the assault
19   occur?
20   "Answer:  How long?
21   "Question:  Yes.
22   "Answer:  Probably about a minute at
23   the most.
24   "Question:  And where exactly did you
25   receive blows, to what parts of your body?"

1           Then described again as before.

2           Picking up at page 24.

3           "Question:  Do you have any explanation for why this assault occurred?

5           "Answer:  Nope.

6           "Question:  Now, after the approximately a minute, couple minutes -- how long did you think it took?

9           "Answer:  About a minute, if that.

10          "Question:  After that, did they say anything to you?

12          "Answer:  No, they left and just slammed the door.  Boom.  Went back downstairs."

14          There was no testimonial evidence presented by the defense to the contrary as far as this recounting is concerned.  However, there is contemporaneous evidence that casts considerable doubt on this event.  The log book, D-564A, reveals that, in the afternoon when the showers in D Unit were taking place and hence the SOG officers were on the scene, there were high ranking visitors to this unit.

23          A Lieutenant Fisher apparently came on the scene at around three o'clock.  A captain, whose name I can't read, but whose officer's position is

1   pretty clear, arrived on the premises sometime
2   between 3:10 and 3:50 PM. And the Ombudsman Carmen
3   Quellis was on the premises at 4:25 at which time
4   meals were passed out as well. The showers,
5   according to the log book, were started at 3:10 and
6   completed at 4:30.
7              It is not inherently credible, frankly,
8   that this beating with four SOG officers crammed into
9   the plaintiff's cell lasting a full minute took place
10  or that the SOGs would take this risk with not only
11  the regular housing officers from the second shift on
12  duty, but other persons, supervisory officers,
13  ombudspeople and, of course, the persons that are
14  passing out meals, a special detail that also came in
15  for that.
16              In short, there was just too much
17  activity and too many people there I think for a SOG
18  unit to have risked this for what would appear to be
19  no apparent reason whatsoever. The SOG unit was in
20  there to assist with the taking of the showers.
21  We've heard some evidence in other cases in the past
22  that there may have been abuse of inmates who chose
23  to take showers and hence were put in a vulnerable
24  position regarding their guards. And I've made
25  determinations in some of those other cases. But

1  here, this man who did not take a shower, and as I
2  said for no apparent reason other than perhaps being
3  in his doorway, alleges that he was assaulted on some
4  sort of a lark or sidetracking by the SOG unit
5  detailed for shower duty.  And once again, this
6  supposedly occurred with people like Lieutenant
7  Fisher and a captain of the guard service and Ms.
8  Quellis present during that time period.
9         In addition, Mr. Boddie made no
10 complaints with regard to the injuries he received
11 except to complain about his hip which the evidence
12 reveals took place some four years later.  As I've
13 mentioned before, this is a case that's fairly close
14 in the sense that there is no direct evidence of
15 anyone coming in here to refute what plaintiff
16 alleges as this beating in his cell.  But
17 contemporaneous documentary evidence does indeed cast
18 significant doubt upon it, as does an exercise in
19 common logic.
20         At the very most, this finder of the
21 fact can only say that this might have taken place,
22 but that is not enough to sustain a burden of proof
23 by a preponderance of the evidence.
24         Finally, although not every item of
25 evidence has been discussed in this opinion/report,

```
1    all evidence presented to the Special Master was
2    reviewed and considered.
3              For the reasons set forth above I
4    recommend in this report that the district court
5    enter an order and judgment of no cause for action
6    with regard to Michael Boddie.
7              That concludes my decisions for today.
8              (Hearing Adjourned)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T E

I, Theresa O. Mastroianni, a Notary Public and Certified Shorthand Reporter of the State of New Jersey, do hereby certify that prior to the commencement of the examination,

M I C H A E L B O D D I E,

was duly sworn by me to testify the truth, the whole truth, and nothing but the truth.

I DO FURTHER CERTIFY that the foregoing is a true and accurate transcript of the testimony as taken stenographically by and before me at the time, place, and on the date hereinbefore set forth, to the best of my ability.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the action.

T O Mastroianni
Theresa O. Mastroianni, C.S.R.
Notary Public, State of New Jersey
My Commission Expires May 5, 2010
Certificate No. XI0857
Date: June 3, 2009